David SWANSON, Appellant,

v.

AMERICAN MANUFACTURING COM-
PANY, Appellee.

No. 17516.

Court of Civil Appeals of Texas,
Fort Worth.

June 28, 1974.

Rehearing Denied July 19, 1974.

Law Offices of George Busch, Inc., and
Laurance L. Priddy, Fort Worth, for ap-
pellant.

Simon & Simon, and J. K. Skillern, and
John W. Hughes, Fort Worth, for appel-
lee.

## OPINION

LANGDON, Justice.

This appeal is from a summary judg-
ment in a suit filed by the plaintiff, David
Swanson, appellant, against the defendants,
American Manufacturing Company of
Texas, the appellee, and A. B. Martin, an
insurance adjuster for Pacific Indemnity
Company, the workmen's compensation
carrier for American Manufacturing Com-
pany.

The cause of action is based upon Ar-
ticle 8307c, Vernon's Ann.Civ.St., Sec. 1,
which provides that, "No person may dis-
charge or in any other manner discrimi-
nate against any employee because the em-
ployee has in good faith filed a claim,

hired a lawyer to represent him in a claim, instituted, or caused to be instituted, in good faith, any proceeding under the Texas Workmen's Compensation Act, or has testified or is about to testify in any such proceeding." Section 2 of the Act provides for reasonable damages and reinstatement for an employee discharged in violation of the Act and places the burden of proof upon the employee.

The plaintiff, David Swanson, the appellant herein, will be referred to as Swanson. The defendant, American Manufacturing Company of Texas, the appellee herein, will be referred to as AMCOT and the defendant, A. B. Martin, as Martin. The latter was severed from the cause of action on Swanson's motion after AMCOT's motion for summary judgment was granted.

Thereafter Swanson brought this appeal asserting that the trial court erred in granting the summary judgment for AMCOT because there were material issues of fact to be presented to a jury and that he was entitled to have a jury determine whether or not he was discharged for exercising his rights under the Texas Workmen's Compensation Laws.

We affirm.

Swanson's cause of action against AMCOT alleged that he was discharged by AMCOT because he filed a workmen's compensation claim while employed by AMCOT or because he had filed such a claim prior to his employment by AMCOT. AMCOT by way of answer stated it fired Swanson because he made at least four false statements in his application for employment and it was because of this that he was fired and not for any other reason.

The following facts are undisputed. Swanson filed his application for employment with AMCOT on September 20, 1972, and was employed by AMCOT from September 21, 1972, to May 18, 1973. Swanson was injured on March 23, 1973. He received medical treatment at the expense of AMCOT, was off work several days

and returned for full time work on April 30, 1973, and worked full time until May 18, 1973, at which time he was discharged. (There is some confusion in the record as to whether he returned for full time work on April 23 or April 30, however, we believe the latter date to be more accurate because of a reference to his return to work about the first of May.)

The application for employment with AMCOT filled out by Swanson and filed by him with AMCOT on September 20, 1972, contained forms designated as (1) application for employment; (2) interview form; (3) "To Each Employee"; (4) your health or physical condition; and (5) report of physical examination.

It is undisputed that the following questions contained in the application and the various forms were answered by Swanson as indicated below and that each of such answers were false.

(1) "Have you ever had any mental or chronic diseases or have you ever filed a claim or made settlement of any kind for injury covered by workman's compensation insurance or otherwise?" Answer: "None."

(2) "Have you ever filed a claim or made settlement of any kind for any injury covered by Workman's Compensation, insurance or otherwise?" Answer: "No."

(3) "Have you received Workmen's Compensation for any injuries?" Answer: "No."

(4) "Have you ever had an accident?" Answer: "No."

The application and the forms above described contained the various recitations set forth below and underneath each such recitation appeared a signature which Swanson in each instance admitted was his.

(A) "I understand that any false and misleading information made in connection with this application will result in revoca-

tion of same and/or dismissal from employment, and agree to hold the American Manufacturing Company of Texas and persons named herein blameless should such information result in revocation of application or dismissal."

(B) "I certify that I have answered all questions to the best of my ability and understand that falsification will be considered cause for dismissal."

(C) "I also understand that any violation of these or any other Company rules can be grounds for disciplinary action or my dismissal."

(D) "I am aware that any false statement on the above shall be sufficient cause for rejection or dismissal."

On or about May 18, 1973, AMCOT recieved information, apparently from Martin who was handling Swanson's March 23, 1973, claim, to the effect that in June or August of 1971 Swanson had made a workmen's compensation claim while employed by Uvalde Construction Co., in Dallas, Texas.

Upon learning of the previous claim filed in 1971, AMCOT confronted Swanson with the information on May 18, 1973, and at such time Swanson admitted that he had deliberately misrepresented the facts when he filled out his application for employment with AMCOT. At the time of the conference with Swanson, on May 18, 1973, Harry Graham, AMCOT's personnel director, terminated Swanson's employment and advised Swanson that he was terminated because he had made false statements in the application which was the basis of his employment with AMCOT. This was the only reason assigned for termination of the employment. (At the time Graham discharged Swanson he was not aware of the March 23, 1973, workmen's compensation claim made by Swanson.)

Swanson, by way of explaining his conduct in making the false and misleading answers, states that prior to the time he worked for AMCOT that he did have an on-the-job injury in 1971 while working for Uvalde Construction Company and filed a workmen's compensation claim which was settled by a compromise settlement.

In Paragraph 2 of Swanson's reply he asserts that he lied in his employment records because, ". . . he had reason to believe and did believe that if he indicated in any of these blanks that he had had a prior workman's compensation claim that he would be discriminated against by American Manufacturing Company of Texas and would not be employed." Neither Swanson's reply nor the controverting affidavit filed herein sets forth any facts, however meager, on which he could rely to support a "reasonable" belief that discrimination was contemplated by AMCOT. Applications of other AMCOT employees appear in the record reflecting they were employed although they truthfully answered the questions concerning prior claims for workmen's compensation which had been filed by them prior to employment by AMCOT and that others retained their jobs after having filed claims during their employment with AMCOT.

In both Paragraph 4 of plaintiff's reply and plaintiff's controverting affidavit appears the assertion that plaintiff was fired because of his workmen's compensation claim, and not because he lied.

It is undisputed in the record that at the time Graham, the personnel director, terminated Swanson's employment that Graham was not aware of the workmen's compensation claim of March 23, 1973, then pending. The only information in Graham's possession at that time was that Swanson did not reveal in his application that he had made the 1971 claim and that Swanson had wilfully withheld such information. It was at that time and on that occasion of confrontation with Swanson and the latter's admission that he was fired.

In summary, the record reflects that when Swanson filed his application for employment with AMCOT on September

20, 1972, he admittedly made false statements as to a previous claim for workmen's compensation which he had filed in 1971. This he argues was because he believed he would not be employed if he told the truth about the claim being filed.

On March 23, 1973, he filed his claim for injury received while employed by AMCOT.

On April 30, 1973, he returned to work at AMCOT on a full time basis.

On May 18, 1973, after Swanson had returned to work on a full time basis, AMCOT learned of the false statements contained in the employment record. Swanson admitted the false statements and on the same date, May 18, 1973, he was discharged for the stated reason that he made false statements in his application.

It is undisputed under the record in this cause that Swanson was not discharged because he filed a claim for compensation in 1971 or because of the claim he filed in March of 1973. The record plainly shows without dispute that Swanson was back at work on a full time basis from April 30, 1973, to May 18, 1973. Swanson was not fired because he filed the 1971 claim. He was fired because he lied about it.

■ When an employee makes false statements in his application for employment, the application is voidable at the employer's option and the employer may discharge the employee. In Huffman v. Southern Underwriters, 133 Tex. 354, 128 S.W.2d 4 (1939) it is stated: "It has long been the rule in this State that misrepresentations in an application for employment do not preclude recovery for injuries, . . . . Such fact could form the basis for the cancellation of a contract of employment, . . . ." To the same effect see Dawson v. Texas & P. Ry. Co., 123 Tex. 191, 70 S.W.2d 392 (1934). In each of the above cited cases it was held that the employees were entitled to be compensated for their personal injuries, but all concurred that the false statements could form the basis for dismissal of the dishonest employee. In the instant case, AMCOT does not deny plaintiff's right to recover any just and due claim for compensation for his personal injury of March 23, 1973.

Neither of the parties to this cause was able to find any state court decisions interpreting Article 8307c, V.A.T.S., and we have found none.

All of Swanson's false representations became a part of his contract of employment. Therein he agreed that, "In consideration of my employment by American Manufacturing Company of Texas, and the salary to be paid, I agree: . . . I understand that any false and misleading information made in connection with this application will result in revocation of same and/or dismissal from employment, . . . ."

In accepting the offer of employment from AMCOT, plaintiff agreed that should he make false and misleading statements, he could be terminated by AMCOT.

AMCOT established the affirmative defenses of breach of contract, good cause for discharge, and contractual estoppel by Swanson's admission of deliberate falsification of his employment application and medical records.

Swanson contends that when AMCOT asserts that he was fired because he falsified his application and that he asserts he was fired because he made a prior claim that a fact issue is raised as to the real reason he was fired. In support of his position he cites Great American R. Ins. Co. v. San Antonio Pl. Sup. Co., 391 S.W.2d 41, 47 (Tex.Sup., 1965). In that opinion it was said that, "If such uncontradicted evidence is from an interested witness, it cannot be considered as doing more than raising an issue of fact, unless it is clear, direct and positive and there are no circumstances in evidence tending to discredit or impeach such testimony . . . . This exception is especially true where the op-

posite party has the means and opportunity of disproving the testimony, if it is not true, and fails to do so. . . . "

In the case at bar the evidence is clear, direct and positive and the contents of the records and the applications of other employees bolster the uncontradicted evidence of AMCOT's witnesses to the effect that AMCOT's policy is to discharge because of false statements in applications and that Swanson was fired because he admittedly made such false and misleading statements.

It was uncontradicted that the reason for questions relating to prior claims was to give the examining doctor an opportunity to check the previous injuries to determine whether same had completely healed. This was to protect the applicant and his fellow employees.

■ Plaintiff, in filing his application, agreed that his past record may be investigated. He acknowledged that he could be dismissed if he had falsely stated such record. Plaintiff has agreed that should he be dismissed because of dishonesty, he will "hold AMCOT blameless". Plaintiff is estopped by his contract of employment from now taking the position that his dismissal is actionable. United Fidelity Life Ins. Co. v. Fowler, 38 S.W.2d 128 (Dallas Civ.App., 1931, error dism.).

"Estoppel by contract or deed is said to mean no more than that a party is bound by the terms of his own contract until it is set aside or annulled for fraud, accident, or mistake. Estoppel by contract . . . is regarded as merely a form of quasi estoppel based on the idea that a party to a contract will not be permitted to take a position inconsistent with its provisions, to the prejudice of another." 22 Tex.Jur.2d, Estoppel, § 3, p. 663.

Were this Court to adopt the reasoning and the position assumed by Swanson in this case and on this appeal it would not only encourage but would serve as an incentive to every person seeking employment to falsify his application, to deceive and to mislead the prospective employer in every possible way in order to gain employment. Such a result was never intended by the Legislature when it enacted Art. 8307c, V.A.T.S.

We find and hold that the undisputed facts and admissions contained in this cause established AMCOT's right to discharge the plaintiff for cause in that he had breached his contract of employment by deliberate falsification of his application for employment and that as a matter of law he was fired because of the false statements contained in his application for employment and not because of either of the compensation claims filed by him.

All points of error are overruled and the judgment of the trial court is affirmed.

MASSEY, C. J., concurring.

MASSEY, Chief Justice (concurring).

I have no doubt of the propriety of affirmance.

However, on the matter of whether, in the absence of the contractual consideration for Swanson's employment (evidenced by writing as representations upon which he was hired) it would be proper to conclude the case by summary judgment I find myself presently in doubt.

Even so, however, I would hold along with my brethren that by theories of estoppel by contract, breach of contract, etc., summary judgment was proper.